**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Annette Wilder, | No. CV-23-00444-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Lisa Annette Wilder ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.* (the "Act"). (Doc. 1). Plaintiff filed her Opening Brief (Doc. 17), the Commissioner filed a Response (Doc. 19), and Plaintiff filed a Reply (Doc. 20). Upon review of the briefs and the Administrative Record (Docs. 13; 14 "AR"), the Court affirms the Administrative Law Judge's January 19, 2022, decision (AR at 14–29).

## I.    Background

Plaintiff has a history of neuropathy, diabetes, migraines, hypertensin, depression, anxiety, panic attacks, carpal tunnel, fibromyalgia, cervical canal stenosis, and right foraminal stenosis. (*Id*. at 44). On December 1 and December 8, 2015, respectively, Plaintiff filed applications for Social Security Disability Insurance ("SSDI") benefits and SSI benefits under Titles II and XVI of the Act (*Id*. at 25). An Administrative Law Judge

1
2
3

("ALJ") issued an unfavorable decision on these applications on September 28, 2018 (*id.* at 61–71), finding Plaintiff was not under a disability through the date of the decision. (*Id.* at 25).

4
5
6
7
8
9
10

On January 13, 2020, Plaintiff filed an application for SSI benefits under Title XVI of the Act, alleging a disability onset date of October 1, 2018. (*Id.* at 14). Plaintiff was fifty-two years old at the time of her alleged onset date and has a high school education. (*Id.* at 42). Plaintiff's claims were initially denied on April 14, 2020, and upon reconsideration on May 14, 2021. (*Id.* at 14). After holding a hearing on November 30, 2021, the ALJ issued a partially favorable decision on January 19, 2022 (*id.* at 11–29) (the "January Decision"), finding plaintiff disabled as of August 21, 2021, but not before.

11

## II. The ALJ's Five Step Process

12
13
14
15
16
17

To be eligible for SSA benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled under the Act:

18
19
20
21
22
23
24
25

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still

26
27

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

28

[2] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)–(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

*Res judicata* applies to administrative decisions but is applied less rigidly than to judicial proceedings. *Chavez*, 844 F.2d at 694. Relevant here, a presumption of continuing nondisability arises from the first ALJ's findings of nondisability. *Id.* at 693. "[T]o overcome the presumption . . . a plaintiff "must prove 'changed circumstances' indicating a greater disability." *Id.* These circumstances may include "[a]n increase in the severity of the claimant's impairment" or "the existence of an impairment not considered in the previous application." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Even if a plaintiff rebuts the presumption, the previous ALJ's findings regarding a plaintiff's RFC, education, and work experience should not be disturbed unless the claimant rebuts the presumption with evidence of changed circumstance or new and material evidence. *Chavez v. Bowen*, 844 F.2d 691, 964 (9th Cir. 1988).

The ALJ's findings in the January Decision are as follows:

As a threshold matter, the ALJ found that Plaintiff rebutted the presumption of continued no disability that arose from the September 28, 2018, unfavorable decision because she had since changed age categories the record contained new and material evidence. (AR at 17). The ALJ thus proceeded with the five-step process.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the application date, January 13, 2020. (*Id.*) At step two, the ALJ found Plaintiff has the following severe impairments: migraine headaches status post cerebral aneurysm clipping, obesity, cervical spondylosis, diabetes, peripheral neuropathy, bilateral carpal tunnel syndrome, left ulnar neuropathy, fibromyalgia, depressive disorder, and generalized anxiety disorder. (*Id.* at 17–18 (citing 20 C.F.R. § 416.920(c)). At step three, he determined Plaintiff does not have an impairment or combination of impairments that

1  meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

2  Part 404.  (*Id*. at 18–19).

3      At step four, the ALJ found Plaintiff has the residual functional capacity ("RFC")

4  to perform light exertional activity[3] with the following exceptions: "occasionally climb

5  ramps and stairs; never climb ladders, ropes, or scaffolding; frequently stoop, kneel, and

6  crouch; occasionally crawl; frequently handle, finger, and feel, bilaterally; frequently lift

7  overhead with the left upper extremity; occasional time around cold and heat; avoid all

8  hazards."  (*Id*. at 19).  The ALJ further stated Plaintiff remains capable of performing

9  simple, routine, and repetitive tasks.  (*Id*.)  In determining Plaintiff's RFC, the ALJ stated

10  that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms

11  can reasonably be accepted as consistent with the objective medical evidence and other

12  evidence, based on the requirements of 20 C.F.R. § 416.929 and [Social Security Ruling]

13  16-3p."  (*Id*. at 19).  The ALJ also considered the medical opinions and prior administrative

14  medical findings according to the requirements of 20 C.F.R. § 416.920c.  (*Id*.)  Given her

15  RFC assessment, the ALJ determined Plaintiff was unable to perform past relevant work

16  since her application date.  (*Id*. at 27).

17      At step five, the ALJ found Plaintiff was "capable of making a successful

18  adjustment to other work that exists in significant numbers in the national economy" prior

19  to August 14, 2021.  (*Id*. at 28–29).  Beginning on August 14, 2021, however, the ALJ

20  noted that Plaintiff turned fifty-five years-old, and so Plaintiff's age category changed to

21  "advanced" under 20 C.F.R. § 416.963.  (*Id*. at 28).  In considering Plaintiff's advanced

22  age, education, and work experience, the ALJ concluded there were no jobs that Plaintiff

23  could perform on the date that her age category changed, and that Medical-Vocational Rule

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b); 416.967(b).

202.06 directed a finding that Plaintiff is disabled.  (*Id*. at 29).  In other words, Plaintiff was deemed not disabled prior to August 14, 2021, but disabled on that date and has continued to be disabled through the date of the January Decision.  (*Id*. at 29 (citing 20 C.F.R. § 416.920(g)).

The SSA Appeals Council denied Plaintiff's request for review of the January Decision, thus adopting the Decision as the agency's final decision.  (*Id.* at 1–3).  This appeal followed.   On March 14, 2023, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), 1383(c)(3) requesting judicial review and reversal of the Commissioner's decision.  (Doc. 1).

**III.   Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted).  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been

1    based on other evidence available.  *Bray v. Commissioner of Social Security Admin.*, 554

2    F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require

3    [the court] to review the ALJ's decision based on the reasoning and factual findings offered

4    by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may

5    have been thinking.").  Generally, "[w]here the evidence is susceptible to more than one

6    rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

7    must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations

8    omitted).

9           "Harmless error principles apply in the Social Security Act context."  *Molina v.*

10   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  An error is harmless if there remains

11   substantial evidence supporting the ALJ's decision, and the error does not affect the

12   ultimate nondisability determination.  *Id.*  Typically, the claimant bears the burden of

13   showing that an error is harmful.  *Id.* at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396,

14   409 (2009)).

15   **IV.    Discussion**

16          Plaintiff does not appeal the ALJ's award of benefits after August 14, 2021—she

17   only appeals the ALJ's conclusion that she was not disabled from her alleged onset of date,

18   October 1, 2018, to August 14, 2021.  (Doc. 20 at 2 (citing *Lingenfelter v. Astrue*, 504 F.3d

19   1028, 1031 n.1 (9th Cir. 2007) (explaining that, where the claimant was awarded benefits

20   on a later application due to a material change in the claimant's age, the only issue before

21   the court was whether the claimant was entitled to past benefits during the remaining period

22   of disability)).  Plaintiff argues the ALJ erred for two reasons: (1) the ALJ did not set forth

23   adequate reasons when rejecting Plaintiff's symptom testimony; and (2) the ALJ

24   improperly rejected the assessments by treating primary care physician assistant Sharon

25   Alguire, P.A.-C. and treating mental health doctor of nursing practice Troy Riutta, D.N.P.

26   The Court will address each of Plaintiff's arguments in turn.

27   / / /

28   / / /

**A.     Whether the ALJ Erred When Rejecting Plaintiff's Symptom Testimony**

First, Plaintiff claims the ALJ failed to give specific, clear, and convincing reasons for rejecting her symptom testimony.  (Doc. 17 at 9–17).  Plaintiff maintains the ALJ failed to connect particular aspects of Plaintiff's testimony with specific inconsistencies in the medical records.  (*Id*.)

**1.     Legal Standard**

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible.  *Lingenfelter*, 504 F.3d at 1035–1036 (9th Cir. 2007).  First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged.  *Garrison*, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' "  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons.  *Id*. at 1015; *Brown-Hunter*, 806 F.3d at 488–89.  "This is not an easy requirement to meet: 'The clear and convincing standard[4] is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following:

> (1)     ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than

---

[4] The Commissioner contends that the clear and convincing standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g).  (Doc. 19 at n.1).  The Court will apply the clear and convincing standard according to binding Ninth Circuit case law.

candid;

(2)   unexplained or inadequately explained failure to seek treatment or to
follow a prescribed course of treatment; and

(3)   the claimant's daily activities.

*Smolen*, 80 F.3d at 1284.  An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.*  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

## 2.   Plaintiff's Symptom Testimony

Plaintiff's claim for disability was based on migraines, chronic depression, anxiety, fibromyalgia, carpal tunnel, brain aneurism, and stroke.  (AR at 92)  The ALJ summarized Plaintiff's symptom testimony as follows:

> [Plaintiff] reported that her medical conditions—including migraines, depression, anxiety, carpal tunnel syndrome, fibromyalgia, brain aneurysm, obesity, and a pinched nerve in the neck and shoulder—prevent her ability to return to work (Exhibits B3E, B7E, B11E, B18E; Hearing Testimony).  The claimant described difficulties with constant pain (Exhibits B5E, B7E, B8E, B9E; Hearing Testimony).  She said she cannot sit or stand for too long, and she cannot sit at a computer without getting a headache or migraine.  She estimated that she has headaches two to four times per week.  She indicated that migraines present with sensitivity to light, numbness and tingling of the fact, poor vision, and vomiting, and she said her medications only help a little bit.  The claimant further testified to trouble reaching out and overhead, as well as gripping and manipulating items.  She said that she lies down every day, more than once a day, for most of the day.
>
> Concerning her mental health, the claimant reported issues with depressive symptoms, trouble sleeping, and panic attacks, such that she has little interest in doing anything, including personal care tasks (Exhibits B5E, B7E, B9E; Hearing Testimony).  She also testified to problems with both short- and long-term memory and difficulties handling stress.  She said she cannot read books anymore because of limited concentration.

- 8 -

(*Id*. at 20).

At the first step of the symptom testimony analysis, the ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id*. at 22). However, at the second step, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id*.) In so doing, the ALJ primarily discussed objective diagnostic and clinical evidence in the record, Plaintiff's ability to carry out daily activities, and Plaintiff's signs of improvements. (*Id*. at 20–23).

### 3. The ALJ's Clear and Convincing Reasons

Plaintiff argues the ALJ's discussion of her symptom testimony was insufficient and unsupported by substantial evidence. She maintains the ALJ summarized objective medical evidence without connecting anything specific in the record to an inconsistency within her symptom testimony. (Doc. 17 at 11). Plaintiff further contends the ALJ repeated this error when considering her ability to carry out daily activities and signs of improvement regarding migraines and acute distress, and mental health. (*Id*. at 12–17). The Commissioner contends the ALJ sufficiently summarized Plaintiff's symptom testimony and then "juxtaposed the examination findings that were not consistent with her allegations." (Doc. 19 at 5). The Court agrees with the Commissioner.

The ALJ sufficiently connected objective medical record findings that were inconsistent with Plaintiff's physical symptom testimony that (1) she suffered from a stroke; (2) she had difficulty with gross movements; and (3) her medication did not help with her migraines; and (4) she had trouble with her memory and can no longer read due to lack of concentration. First, the ALJ noted that none of Plaintiff's neurology records indicated she experienced a stroke despite her allegations. (AR at 18 (citing Exhs. B12F at 20-21; B14F at 14–15; B12F; B14F; B16F; B31F; B34F; B45F). Second, the ALJ specifically responded to Plaintiff's allegations relating to her neck, shoulder, and fine motor skills. The ALJ raised various X-rays to note that, although they reflected some

degenerative diseases, they confirmed Plaintiff had no fractures or abnormalities. (*Id*. at 21 (citing Exhs. B8F at 2; B10F at 3)). The ALJ further noted that Plaintiff engaged in physical therapy for her shoulder, which showed improvement of range and motion and overhead lifting exercises, and Plaintiff has not required surgical intervention, injection therapy or any referrals for more aggressive treatment. (*Id*. at 21 (Exhs. B17F; B18F at 23)). The ALJ explained that Plaintiff's neurologist consistently described her subsequent examinations as "unchanged" and that she was "alert, cooperative, fully oriented, with 5/5 motor strength in all extremities, intact coordination, and intact gait." (*Id*. at 23 (citing Exhs. B16F at 2; B12F at 13–14)). This evidence was contrary to Plaintiff's testimony that she had trouble reaching overhead and gripping and manipulating items.

As to Plaintiff's claim that her medication did not help with her migraines, the ALJ found this inconsistent with her neurology reports indicating her migraines are well controlled on medication. (*Id*. at 21 (citing Exhs. B43F at 21; B45F at 1), 22 (citing Exhs. B12F at 2; B31F at 7; B43F at 14, 21)) The ALJ cited to the record to note that Plaintiff's treatment regimens for numbness and pain appear effective. (*Id*. at 22 (citing B43F at 16)). Specifically, the Plaintiff reported good results from a trial of Cambia, a nonsteroidal anti-inflammatory medication in the treatment of migraines. (*Id*. at 21 (citing Exh. B12F at 2)).

Last, the ALJ sufficiently connected objective medical record findings to undermine Plaintiff's mental symptom testimony she has trouble with her memory and concentration. For example, the ALJ noted multiple instances within the objective evidence were Plaintiff's memory has been "found intact or good with no deficits of cognition." (*Id*. at 23–24 (citing Exhs. B13F at 17–18; B31F at 6, 12; B37F at 17–18; B38F at 4–5; B44F 7, 48, 54, 60, 66, 73; B45F at 4)).

"When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of her symptoms [] by offering specific, clear, and convincing reasons for doing so.'" *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The "'clear and convincing' standard requires an ALJ to show his work," and

the Court finds the ALJ adequately did so here. *Id.* at 499  "The standard isn't whether [the reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.*  The ALJ did explicitly identify portions of Plaintiff's symptom testimony he found uncredible, and justified each of his findings with objective medical evidence that were inconsistent with the severity of Plaintiff's complaints. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021); *see also Ghanim*, 763 F.3d at 1163.  And this Court can neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas*, 278 F.3d at 954.  Plaintiff's contention that the ALJ only generally referred to her "alleged symptoms" is a mischaracterization of the January Decision.  Furthermore, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  Therefore, the Court need not consider Plaintiff's challenges to the ALJ's consideration of her daily activities and mental improvements to conclude the ALJ did not err when rejecting her testimony.

In sum, the Court finds the ALJ's rejection of Plaintiff's symptom testimony is supported by substantial evidence.

### B.   Whether the ALJ Erred When Rejecting Certain Medical Opinions

In determining Plaintiff's RFC, the ALJ evaluated the medical opinions by treating primary care physician assistant, Sharon Alguire, P.A.-C. ("PA Alguire"), and treating mental health doctor of nursing practice, Troy Riutta, D.N.P. ("DNP Riutta").  (AR at 26–27).  Plaintiff challenges the ALJ's decision to reject PA Alguire and DNP Riutta's assessments.  (Doc. 17 at 19–24).  She maintains the ALJ did not adequately articulate how he considered the supportability and consistency factors for evaluating medical opinions under *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  (*Id.* at 18).  The Commissioner argues the assessments are "little more than check the box forms with no explanation of the opinion for extreme limitations" and were therefore appropriately disregarded as unsupported and inconsistent with the overall record.  (Doc. 19 at 5–8).  The Court agrees

with the Commissioner.

### 1.    Legal Standard

Because Plaintiff's application for SSI benefits at issue occurred after March 27, 2017, she is subject to the new regulations for evaluating evidence from medical providers.  *See* 20 C.F.R. § 416.920c.   The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

*Id*. § 416.920c.[5]  The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. *Id*. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the recent changes to the SSA regulations displaced the former hierarchy of medical opinions.  *Woods*, 32 F.4th at 787.   The longstanding rule that assigned "presumptive weight based on the extent of the doctor's relationship with the claimant [] no longer applies."  *Id*.   An ALJ no longer needs to articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion.  *Id*. at 792.  "Now, an ALJ's decision . . . to discredit *any* medical opinion, must simply be supported by substantial evidence."  *Id*. at 787 (emphasis added).

However, "[e]ven under the new regulations, an ALJ cannot reject an examining or

---

[5]  Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c.

treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id*. at 792.  Instead, "[t]he agency must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.*  Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

### 2.      PA Alguire's August 3, 2021, Sunset Assessment

Plaintiff first raises PA Alguire's August 3, 2021, "Medical Assessment of Ability to do Work Related Activities" through Sunset Family Physicians PC (AR at 970–72 (Exh. B4F)) (the "Sunset Assessment").  The Sunset Assessment was in the form of check-box interrogatories.  (*Id*.)  PA Alguire opined that Plaintiff could sit for only fifteen minutes at a time; sit for a total of two hours or less in an eight-hour day; stand and walk for a total of two hours or less in an eight-hour day; rarely lift and carry anything; and must change positions between lying down, sitting, and walking every fifteen minutes.  (*Id*. at 970).  PA Alguire also noted claimant's capacity for frequent handling, gripping, or grasping, but rare fingering.  (*Id*. at 971).  PA Alguire did not provide any further explanations apart from listing diagnoses, nor did she provide any remarks on Plaintiff's functional limitations.  (*Id*. at 970–972).  The ALJ took issue with the lack of written explanation for PA Alguire's extreme findings, and found that her associated treatment notes from that same day (*id*. at Exhs. B43F; B45F) did not lend any further support.  (*Id*. at 26).  Therefore, the ALJ rejected PA Alguire's Sunset Assessment.  (*Id.*)

Plaintiff argues the ALJ failed to sufficiently explain why PA Alguire's findings were unpersuasive.  (Doc. 17 at 19–22).  She cites to *Burrell v. Colvin*, for the proposition that treating providers are not required to include detailed explanations in their assessments, albeit in "check-box" form, "so long as underlying evidence establishes the

existence of the claimant's impairments."  (*Id*. at 19 (citing 775 F.3d 1133, 1140–41 (9th Cir. 2014) (holding the ALJ erred when discrediting a physician's form assessment because its findings were consistent with the physician's own treatment notes)).  The Commissioner contends the ALJ *did* articulate why PA Alguire's 2021 Sunset Assessment was inconsistent with the overall record—namely, because the extreme findings therein were contrary to PA Alguire's treatment notes setting forth Plaintiff's normal capabilities.  (Doc. 19 at 6).  Plaintiff replies that some normal findings in one visit cannot invalidate PA Alguire's entire assessment.  (Doc. 20 at 7).

The Court concludes there is substantial evidence to support the ALJ's decision to disregard PA Alguire's Sunset Assessment under the supportability and consistency factors.  The ALJ reasonably found the Sunset Assessment was unpersuasive because it contained little in terms of "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1)); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions[.]").  The ALJ further rejected PA Alguire's check-box form conclusions because its extreme findings were inconsistent with PA Alguire's underlying treatment notes observing Plaintiff with a "a normal gait, intact sensation, and nonfocal neurological examination."  (AR at 26 (citing Exh. B43F at 4)).  Indeed, "[a] conflict between a treating physician's medical opinion and [her] own notes is a 'clear and convincing reason for not relying on the doctor's opinion,' and therefore is also a specific and legitimate reason for rejecting it."  *Ford v*, 950 F.3d at 1154 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  Therefore, the Court will affirm the ALJ's decision to disregard the Sunset Assessment

### 3.      DNP Riutta's August 10, 2021, Torres Assessment

Plaintiff also raises DNP Riutta's August 10, 2021, "Supplemental Questionnaire as to Residual Functional Capacity" through Terros, a health care company specializing in mental health (AR at 973–74 (Exh. B41F)) (the "Terros Assessment").  Similar to the Sunset Assessment, the Terros Assessment was in the form of check-box interrogatories.

(*Id.*)  DNP Riutta opined that Plaintiff had moderate limitations with respect to understanding, remembering, making judgments, concentrating for an hour, pace, interactions with the public, and routine.  (*Id.* at 973).  DNP Riutta further assessed that Plaintiff had serious limitations in concentrating for two hours and responding to work pressures.  (*Id.*)  As to work performance, DNP Riutta indicated that Plaintiff's limitations, taken together, would result in her being off task more than 30% of a typical workday, absent more than five days per month, and efficient for less than 50% of the workday.  (*Id.* at 974).  DNP Riutta's only written comment was that "[Plaintiff] has persistent treatment resistant depression that causes severe impairments."  (*Id.*)  The ALJ found this singular statement was "inadequate to support the significant limitations of [DNP Riutta's] opinions," notwithstanding the fact the statement also appeared in DNP Riutta's associated treatment notes (*id.* at Exh. B44F).  (AR at 27).  The ALJ also stated the Terros Assessment "reache[d] a nearly opposite conclusion" than (1) other state agency psychological consultants and (2) other Terros records that documented Plaintiff's largely normal mental status examinations and improvements with treatments (*id.* at Exhs. B13F; B15F; B28F; B36F; B37F; B44F).  (*Id.* at 26–27).  Therefore, the ALJ rejected DNP Riutta's Torres Assessment.  (*Id.* at 27).

Plaintiff argues the ALJ improperly ignored DNP Riutta's written statement regarding the severity of her depression because it properly appeared in DNP Riutta's associated treatment notes.  (Doc. 17 at 22).  Plaintiff reasons that, under *Burrell*, "an assessment may not be rejected for lack of explanation on the assessment form itself if the assessment is supported in the medical evidence."  (*Id.* at 22 (citing 775 F.3d at 1140)).  Plaintiff contends the ALJ improperly characterized the Terros Assessment as inconsistent with other Terros records because "the Ninth Circuit has cautioned against plucking notes of improvement from a claimant's mental health treatment records to discount the severity of the claimant's condition."  (*Id.* at 22 (citing *Garrison*, 759 F.3d at 1017–18)).  The Commissioner opposes, arguing the ALJ's reasoning was justified because he identified areas in the medical record that the Terros Assessment directly contradicted.

(Doc. 19 at 7).  The Commissioner points out that the ALJ articulated that the 2021 Terros Assessment was "'nearly opposite' of the conclusions reached by the state agency reviewing physicians, out of proportion to [Plaintiff's] treatment, and inconsistent with the evidence of benefit from treatment." (*Id.*)

There is substantial evidence to supporting the ALJ's decision to disregard DNP Riutta's Torres Assessment under the supportability and consistency factors.  Like the Sunset Assessment, the ALJ reasonably found that the Torres Assessment was unpersuasive because it lacked adequate explanation and justifications.  *See* 20 C.F.R. § 404.1520c(c)(1)); *see also Ford*, 950 F.3d at 1155.  Although the Torres Assessment is distinct from the Sunset Assessment in that it was consistent with DNP Riutta's underlying treatment notes, the ALJ went on to state clear and convincing reasons for why its findings were nevertheless inconsistent with the overall record.  DNP Riutta's extreme findings were opposite to those of the state agency psychological consultants (AR at Exhs. B2A; B4A), who found Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk, and sit for about six hours in an eight hour workday.  (*Id.* at 86, 111).  And to the extent there were conflicts in the Terros records regarding Plaintiff's mental status examinations, the ALJ is tasked with resolving such ambiguities.  *Andrews*, 53 F.3d at 1039; *cf. Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (affirming the ALJ's credibility determination when the ALJ "reasonably noted that the underlying complaints upon which [the claimant's] reports of pain were predicated had come under control").  Therefore, the Court will affirm the ALJ's decision to disregard the 2021 Torres Assessment

## V.     Conclusion

The ALJ sufficiently conveyed his reasons for rejecting Plaintiff's symptom testimony.   Likewise, the ALJ sufficiently articulated why he disregarded PA Alguire's Sunset Assessment and DNP Riutta's Torres Assessment.  Therefore, the ALJ's conclusion that Plaintiff was not disabled from her alleged onset of date, October 1, 2018, to August 14, 2021, is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that the Administrative Law Judge's January 19, 2022, decision is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 30th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge